UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA DORE,

    Plaintiff,

v.

FIVE LAKES AGENCY, INC.,

    Defendant.

No. 14 CV 6515

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Linda Dore took out two mortgages on her home.[1] DSOF ¶ 3. The second one—the one relevant here—was with J.P. Morgan Chase. DSOF ¶ 3. After signing that mortgage, Dore filed for bankruptcy and obtained a bankruptcy discharge. DSOF ¶ 6. Subsequently, J.P. Morgan Chase referred Dore's account to Five Lakes Agency, Inc., for "lien follow-up services." DSOF ¶ 10.[2] Those services included sending three letters, placing fifty-one phone calls, and having six phone conversations with Dore about the lien on her home. DSOF ¶¶ 15, 22–23.

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and accompanying exhibits. "DSOF" refers to Five Lakes' statements, with Dore's responses [35]. "PSOF" refers to Dore's statements, with Five Lakes' responses [41]. Five Lakes argues that Dore's filing must be stricken because it is not signed. [42] at 1. But it was electronically filed and is therefore "deemed authorized and signed" by her attorney. General Order on Electronic Case Filing § IV(F), http://www.ilnd.uscourts.gov/home/clerksoffice/rules/admin/pdf-orders/General%20Order%2014-0024%20-%20Electronic%20Case%20Filing%20General%20Order%20Redline.pdf (accessed July 7, 2015).

[2] The allegation in DSOF ¶ 10 is one of several that Dore "denied" without explaining the dispute or citing to "affidavits, parts of the record, [or] other supporting materials." L.R. 56.1(b)(3)(B). Where defendant's allegations are reasonably supported and plaintiff's denial is not, the facts are deemed admitted. *See, e.g., Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

Dore filed suit, contending that Five Lakes' phone calls and letters violated bankruptcy laws, the Fair Debt Collection Practices Act, and state laws prohibiting the invasion of privacy. Five Lakes moves for summary judgment. For the reasons below, Five Lakes' motion is granted.[3]

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made," the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 322. A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In its analysis, the court must construe the facts and make reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

---

[3] Dore withdrew her invasion-of-privacy claim. [36] at 10. Five Lakes' request for fees and costs on that claim (pursuant to the court's inherent authority) is denied. Five Lakes did not show that, by pleading an invasion-of-privacy claim, Dore "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012).

II. **Analysis**

    A. **Bankruptcy Discharge Injunction**

After a debtor obtains a discharge under the Bankruptcy Code, creditors are enjoined from attempting to collect discharged debts "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "A debtor dunned after" obtaining a discharge can "ask the bankruptcy judge to hold the other party in contempt of . . . the discharge injunction." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). That is the debtor's *only* remedy under Section 524—she cannot file suit directly in federal district court. *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001); *Jernstad v. Green Tree Servicing, LLC*, 2012 U.S. Dist. LEXIS 108988, *3–4 (N.D. Ill. 2012); *Peeples v. Blatt*, 2001 U.S. Dist. LEXIS 11869, *16 (N.D. Ill. 2001).[4] Accordingly, Dore's claim under 11 U.S.C. § 524(a)(2) is dismissed without prejudice.

    B. **Fair Debt Collection Practices Act**

"The Fair Debt Collection Practices Act seeks to eliminate abusive debt collection practices by debt collectors." *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 638 (7th Cir. 2014) (quoting 15 U.S.C. § 1692(e)). Dore contends that Five Lakes

---

[4] If Dore's discharge-injunction claim could be adjudicated in this court, Five Lakes would be entitled to summary judgment. Under 11 U.S.C. § 524(j), the injunction does not bar acts in the ordinary course of business, by creditors with security interests in the debtor's home, seeking to obtain periodic payments in lieu of foreclosure. Dore's only argument that Section 524(j) does not apply is that "the ordinary course of business" is limited to regular monthly communications. [36] at 4. Dore cites no authority for that counterintuitive argument. Further, the letters included explicit disclaimers that the communications were pursuant to Section 524(j) and did not seek to recover against Dore personally (and the phone conversations contained similar disclaimers). DSOF ¶¶ 15, 19, 24. In such circumstances, bankruptcy courts have found that the discharge injunction is not violated. *See, e.g.*, *In re Manning*, 505 B.R. 383 (Bankr. D.N.H. 2014); *In re Bates*, 517 B.R. 395, 399–402 (Bankr. D.N.H. 2014); *In re Jones*, 2009 Bankr. LEXIS 4316, *7–9 (Bankr. S.D. Ind. 2009); *see also In re Pennington-Thurman*, 499 B.R. 329 (B.A.P. 8th Cir. 2013).

violated the FDCPA by: (1) contacting her instead of her attorney, in violation of Section 1692c(a)(2); (2) using false representations or deceptive means, in violation of Section 1692e(10); and (3) repeatedly calling her phone with intent to annoy, abuse, or harass her, in violation of Section 1692d(5). Five Lakes argues that the FDCPA does not apply, but even if it does, defendant did not violate the FDCPA in any of the alleged ways.

> 1. *Whether Dore's Debt was Primarily for Personal, Family, or Household Purposes*

The FDCPA covers debts incurred primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Five Lakes argues that the law doesn't apply because Dore used the money obtained from her second mortgage for *business* purposes. [31-1] at 4–5. Five Lakes' support for this argument consists of the following portion of Dore's deposition testimony:

> Q: So when you received this home equity loan that we've been discussing today, what did you do with the money?
>
> A: I think I was paying off bills.
>
> Q: What kind of bills were you paying off? Do you remember?
>
> A: I don't recall.
>
> . . .
>
> Q: Do you remember if you used any of this home equity loan to pay for, I don't know, stuff for [your] business?
>
> A: I don't remember.

[30-3] at 60:20–61:16. That is hardly irrefutable proof that Dore's loan was not primarily for personal, family, or household purposes. Indeed, Five Lakes ignores the word "primarily" when it argues (without citation) that the FDCPA does not

4

apply if Dore paid *any* of her business expenses with *any* portion of the borrowed money. [42] at 9.

In response to Five Lakes' motion for summary judgment, Dore submitted an affidavit in which she swears that the money was used for personal, not business, purposes. [35-2] ¶¶ 6–7. She claims to have reviewed her tax returns (including her business-expense deductions), and she explains that her business expenses were paid by her employer and then withheld from her commissions. [35-2] ¶¶ 3–5; [36] at 6. Five Lakes challenges the veracity of Dore's sworn statements. PSOF ¶ 13 (reply); [42] at 7–8.[5] But her statements are not so inconsistent with her deposition testimony, and not so lacking in explanation, that her affidavit can be disregarded as a "sham." *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 2015 U.S. App. LEXIS 7912, *24–25 (7th Cir. 2015) (affidavits contradicting deposition testimony, with no plausible explanation, with contradictions "so clear that the only reasonable inference [is] that the affidavit was a sham[,]" may be disregarded, but that principle "must be applied with great care . . . because summary judgment is not a tool for deciding questions of credibility.").

Because a genuine dispute exists as to how Dore used the money, Five Lakes is not entitled to summary judgment on the ground that the loan was primarily for business purposes.

---

[5] Five Lakes criticizes Dore's affidavit as "self-serving" ([42] at 7, 8), but that critique is of no import at this stage. The Seventh Circuit "long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'" *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (citing cases).

### 2. *Whether Five Lakes' Actions Concerned "the Collection of any Debt"*

Dore's claims under the FDCPA apply only to communications made "in connection with the collection of any debt." 15 U.S.C. §§ 1692c, 1692d, 1692e. Five Lakes argues that the law doesn't apply because its communications concerned "the enforcement of a security interest" rather than "the collection of any debt." [31-1] at 6–8. That argument is foreclosed by *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 382, 386–87 (7th Cir. 2010), in which the Seventh Circuit held that a letter offering to discuss "foreclosure alternatives" "qualifie[d] as a communication in connection with an attempt to collect a debt."

### 3. *Whether Five Lakes Violated 15 U.S.C. § 1692c(a)(2)*

Dore contends that Five Lakes violated the prohibition against "communicat[ing] with a consumer in connection with the collection of any debt" despite "know[ing] the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2); [28] ¶ 24. Dore gets off on the wrong foot by arguing that Five Lakes knew "or should have known" that she was represented, and that she "would have" told Five Lakes she was represented, had she been asked. [36] at 8. What Five Lakes "should have known" is irrelevant because Section 1692c(a)(2) applies only if the debt collector *actually* knows that the consumer is represented. *Randolph*, 368 F.3d at 729–30.

Dore argues that Five Lakes' actual knowledge of her representation can be inferred because Five Lakes possessed documents showing that she was represented by an attorney in her bankruptcy proceedings. [36] at 8. But Section

6

1692c(a)(2) applies only where the debt collector knows the consumer is represented by an attorney with respect to the specific debt being collected. *Miller v. Allied Interstate, Inc.*, 2005 U.S. Dist. LEXIS 13121, *10–12 (N.D. Ill. 2005) (citing *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991)); *Berndt v. Fairfield Resorts, Inc.*, 337 F.Supp.2d 1120, 1132–33 (W.D. Wis. 2004) (citing *Graziano*).[6]

Because Dore has not marshaled any evidence that Five Lakes knew that she was represented by an attorney with respect to J.P. Morgan Chase's lien on her home, summary judgment is granted in Five Lakes' favor on Dore's claim under 15 U.S.C. § 1692c(a)(2).

### 4. *Whether Five Lakes Violated 15 U.S.C. § 1692e(10)*

Dore contends that Five Lakes violated the prohibition against using "any false representation or deceptive means" to attempt to collect a debt. 15 U.S.C. § 1692e(10). In her amended complaint, Dore alleged that Five Lakes violated this prohibition by "[a]lleging that the discharged debt was due when Five Lakes Agency, Inc., knew or should have known that the Plaintiff had no further obligation to pay the debt." [28] ¶ 24(b). Dore has abandoned that position. [36] at 9. Her new position is that Five Lakes' statement that it was contacting Dore "to obtain periodic payments in lieu of foreclosure was false and misleading." [36] at 9.

---

[6] Indeed, it appears that Dore may not have been represented by an attorney with respect to the relevant debt. Five Lakes argued that she wasn't ([31-1] at 9) and Dore did not respond. And Dore admitted that "[t]here is no engagement agreement between Plaintiff and her attorney with respect to the lien maintained by Chase or the collection of debts generally; the only engagement agreements between Plaintiff and her counsel were for her bankruptcy case and this case." DSOF ¶ 39. After this suit was filed, Dore resolved the lien, handling the negotiations without an attorney. DSOF ¶ 42. Plainly, if Dore was not represented with respect to the relevant debt, Five Lakes cannot have violated Section 1692c(a)(2).

7

But "a plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

On the merits, Dore's argument is unpersuasive. Where a debt collector's language is plain and not misleading, a claim under Section 1692e will be dismissed on the pleadings. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776–77 (7th Cir. 2007). Where the language is not plainly benign, the Seventh Circuit distinguishes cases "involving letters that are plainly deceptive or misleading" from those in which the language "is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). Liability can be found in a case in the first category without any "extrinsic evidence." *Id*. But for a case in the second category, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id*. Dore contends that Five Lakes never intended to foreclose on her property, and that its lack of intention is (somehow) inconsistent with its statement that it was contacting her "in lieu of" foreclosure. The inconsistency is not so obvious that Dore can survive summary judgment without extrinsic evidence tending to show that Five Lakes' language was misleading—she has marshaled no such evidence.

Because Dore cannot change theories at this late stage, and because her new theory is not viable in any event, Five Lakes is entitled to summary judgment on Dore's claim under 15 U.S.C. § 1692e(10).

     5.     *Whether Five Lakes Violated 15 U.S.C. § 1692d(5)*

A debt collector may not "[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Dore contends that Five Lakes violated this prohibition; Five Lakes argues that it is entitled to judgment as a matter of law that it did not.

Whether multiple phone calls demonstrate a debt collector's intent to annoy, abuse, or harass is ordinarily a question of fact for the jury. *Meadows v. Franklin Collection Serv., Inc.*, 414 Fed.Appx. 230, 233 (11th Cir. 2011); *Hendricks v. CBE Grp., Inc.*, 891 F.Supp.2d 892, 896 (N.D. Ill. 2012). But judgment as a matter of law is appropriate where, based on the facts of the case, no reasonable jury could find that the debt collector had the intent to annoy, abuse, or harass the consumer. *Shuler v. Ingram & Assocs.*, 441 Fed.Appx. 712, 718 (11th Cir. 2011); *Allen v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 158632, *22–23 (N.D. Ill. 2012). Relevant considerations include the volume and pattern of calls placed. *Allen*, 2012 U.S. Dist. LEXIS 158632 at *25; *Hendricks*, 891 F.Supp.2d at 896; *Bassett v. I.C. System, Inc.*, 715 F.Supp.2d 803, 809–10 (N.D. Ill. 2010).

Between March 20, 2012, and September 27, 2012, Five Lakes called Dore about once per week. [35-1] at 8. In most cases, a message was left asking Dore to return the call. DSOF ¶ 26. On September 27, 2012, Dore called Five Lakes and

9

reported that she was in the process of modifying her first mortgage (a mortgage senior to J.P. Morgan Chase's). [35-1] at 8; [30-5] at Ex. 4.[7] Five Lakes told Dore that its client was J.P. Morgan Chase, which held "what's left of the second mortgage," which was "just a lien now." [30-5] at Ex. 4. Five Lakes' agent told Dore, "once you get your modification done with [the senior mortgagee], call us up and we'll talk about the second lien. We're more than willing to wait." *Id*. Dore said, "alrighty, hopefully by the end of the year everything will be hunky-dory," to which the agent responded, "oh, I know it's a slow process, but hang in there, Linda." *Id*.

A month and a half later, Five Lakes called and left a voicemail message. [35-1] at 9. Two months after that, on January 10, 2013, Five Lakes called to follow up and Dore reported that she had begun making payments on her modified senior mortgage. *Id*.; [30-5] at Ex. 4. Five Lakes' agent told Dore that J.P. Morgan Chase's lien would remain on her property until paid off, but that because she had been through bankruptcy, no interest or fees or penalties were accumulating. [30-5] at Ex. 4. Dore asked what her options were, and the agent provided three: (1) pay in full; (2) make a settlement offer; or (3) make payments to reduce the outstanding balance. *Id*. Dore chose the third option and said that she could pay $200 monthly, starting the following month. *Id*.

Over the next seven months, up to August 21, 2013, Five Lakes left six voicemail messages. [35-1] at 11–12. On August 23, 2013, Five Lakes called to ask whether Dore had mailed her August payment; Dore said she would mail it that

---

[7] Exhibit 4 to Exhibit E to Five Lakes' Local Rule 56.1 statement is a collection of audio recordings on compact disc.

10

day. [30-5] at Ex. 4. Five Lakes called again four days later, and then again three days after that. *Id*. In those very short calls, Dore said that she had already mailed her August payment, and then hung up. *Id*.

The next communication was five and a half months later.[8] On March 11, 2014, Five Lakes called asking about Dore's monthly payment. [35-1] at 14; [30-5] at Ex. 4. Dore said that she would send the payment the next day. [30-5] at Ex. 4. Over the next five months, Five Lakes left eleven or twelve messages. [35-1] at 16–17.[9]

In total, Five Lakes called Dore fifty-one times between March 20, 2012 and August 6, 2014. DSOF ¶ 22.[10] Six calls resulted in actual conversations. DSOF ¶ 23. Dore argues that fifty-one calls is excessive "regardless of the time frame," but that argument is meritless—calling once per month for more than four years is substantially different from calling three times per day for seventeen days. Both the volume *and the pattern* of calls matter. *Allen*, 2012 U.S. Dist. LEXIS 158632 at *25; *Hendricks*, 891 F.Supp.2d at 896; *Bassett*, 715 F.Supp.2d at 809–10. Five Lakes placed an average of fewer than two calls per month. Although the frequency varied

---

[8] In October 2013, Five Lakes tried twice to contact Dore but the phone number on file was no longer correct. [35-1] at 13.

[9] The phone log reflects a June 30, 2014, call. [35-1] at 16. Unlike all the others, this call is not mentioned in Dore's amended complaint.

[10] Five Lakes briefly argues that thirty-four of its calls should be ignored because they occurred outside the limitations period. [31-1] at 10; [42] at 13. Because the total volume of calls is relevant, and some calls were made within the limitations period, all of the calls are relevant, either as "background evidence in support of a timely claim," *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Malin v. Hospira, Inc.*, 762 F.3d 552, 561 (7th Cir. 2014) (both cases in Title VII context), or in view of the "continuing violation" doctrine, *see Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) (explaining doctrine); *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 974–75 (W.D. Wis. 2013) (citing cases and applying doctrine to Section 1692d claims).

at times, Dore has not argued that a particular time period was more annoying, abusive, or harassing than any other.

A review of comparable cases is instructive. In *Hendricks*, summary judgment was denied where the defendant placed three calls a day, seven days a week, for two months, including calls in quick succession and calls at very inconvenient hours. 891 F.Supp.2d at 896–97. In *Bassett*, summary judgment was denied where the defendant placed thirty-one calls over twelve days. 715 F.Supp.2d at 810. In contrast, in *Allen*, the court dismissed a claim in which the plaintiff alleged she received "several" calls over a four- or five-month period and did not allege that she received multiple calls within a short period. 2012 U.S. Dist. LEXIS 158632 at *21–28. And in *Shuler*, the Eleventh Circuit affirmed summary judgment because the defendant's "five telephone calls to the Shulers, including one successful contact with Mr. Shuler that lasted for less than five minutes and two voicemail messages, do not amount to repeated or continuous attempts to annoy, abuse, or harass the Shulers." 441 Fed.Appx. at 718.

Fifty-one calls certainly sounds like a lot, but the substantial period of time over which the calls occurred distinguishes this case significantly from *Hendricks* and *Bassett*. Five Lakes averaged fewer than two calls per month; in *Hendricks* and *Bassett*, the defendants averaged more than two calls *per day*. Further, Dore relies *only* on the volume of calls—she was not called more than once in a single day, and has not argued that she was called at inconvenient hours or after she asked Five Lakes to stop calling. There is no evidence that the calls were hostile or vexatious.

In sum, her case is closer to *Allen* and *Shuler* than it is to *Hendricks* and *Bassett*, and I conclude that no reasonable jury could find, based on the evidence marshaled by Dore, that Five Lakes had the intent to annoy, abuse, or harass her. Accordingly, Five Lakes is entitled to summary judgment on Dore's claim under 15 U.S.C. § 1692d(5).

### III. Conclusion

For the foregoing reasons, Five Lakes' motion for summary judgment [31] is granted. Dore's claim under 11 U.S.C. § 524(a)(2) is dismissed without prejudice to her filing a motion for contempt in the court that adjudicated her bankruptcy petition. Summary judgment is entered in favor of defendant on plaintiff's claims under the Fair Debt Collection Practices Act. Terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 7/8/15